# In the

# United States Court of Appeals

## For the Seventh Circuit

————————

No. 02-4392

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

MICHAEL C. ANTONELLI,

*Defendant-Appellant.*

————————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 78 CR 721—**William T. Hart**, *Judge.*

————————

SUBMITTED APRIL 5, 2004[*]—DECIDED JUNE 3, 2004

————————

Before BAUER, COFFEY, and ROVNER, *Circuit Judges.*

PER CURIAM. Federal inmate Michael C. Antonelli, who is currently serving sentences for a 1997 bank fraud and a 2001 bank robbery at the United States Penitentiary in Beaumont, Texas, filed in the district court a self-styled "Motion for a Court Order Allowing Defendant to Possess

———————————————

[*] After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R. App. P. 34(a)(2).

the Presentence Investigation Report," challenging a newly enacted Bureau of Prisons (BOP) policy forbidding inmates serving a sentence in custody from retaining possession of their presentence reports in their cells. *See* Bureau of Prisons Program Statement 1351.05, Release of Information, (Sept. 19, 2002). Antonelli was unhappy that he could not keep in his cell a copy of his presentence report prepared after convictions in the Northern District of Illinois on 1978 firebombing charges. But rather than bringing an independent civil action in the district where he is confined, Antonelli filed his motion in the Northern District of Illinois using the cause number from his 1978 criminal case. The district court denied the motion in a minute order, concluding that Antonelli had adequate access to his presentence report under the BOP policies. We conclude, however, that Antonelli was not entitled to a merits ruling without prior compliance with the procedural requirements of the Prison Litigation Reform Act (PLRA), and thus we vacate the district court's judgment and remand for further proceedings.

Because Antonelli filed his "motion" under the district-court cause number of his 25-year-old criminal case and even captioned the United States as the *plaintiff*, the district court understandably appears to have viewed the filing as an additional motion in that long-finished proceeding. When determining the character of a pro se filing, however, courts should look to the substance of the filing rather than its label. *Gleash v. Yuswak*, 308 F.3d 758, 761 (7th Cir. 2002); *Godoski v. United States*, 304 F.3d 761, 763 (7th Cir. 2002). And what Antonelli filed is not a motion in the 1978 criminal case but in actuality a separate, unrelated civil action raising a facial challenge to a BOP policy. *See United States v. Campbell*, 294 F.3d 824, 826-27 (7th Cir. 2002) (per curiam) (recognizing that motion seeking access to grand jury transcripts was civil action even though filed under old criminal case number because motion had

independent jurisdictional basis); *Smith v. United States Dist. Ct. Officers*, 203 F.3d 440, 441 (7th Cir. 2000) (claim for access to judicial court records not writ of mandamus but civil action under federal question jurisdiction). That distinction leads us to the real problem in this appeal.

Because Antonelli's filing is appropriately seen as an attempt to commence a new civil suit, the PLRA subjected him to significant procedural constraints and potential consequences that he in effect evaded by using his old criminal case number. *See United States v. Howell*, 354 F.3d 693, 695 (7th Cir. 2004); *Moran v. Sondale*, 218 F.3d 647, 649 (7th Cir. 2000) (per curiam). The PLRA first mandates that inmates exhaust their administrative remedies before bringing a civil action challenging prison conditions, which is what Antonelli's "motion" does. *See* 42 U.S.C. § 1997e(a); *Massey v. Wheeler*, 221 F.3d 1030, 1034 (7th Cir. 2000). Furthermore, had Antonelli properly designated his filing as a civil action that bears no relation to his 1978 criminal case, the district court would have initially screened his claim to determine whether it was frivolous, malicious, or failed to state a claim before putting the defendant to the burden of responding. *See* 28 U.S.C. § 1915A(b); *Zimmerman v. Tribble*, 226 F.3d 568, 571 (7th Cir. 2000). Antonelli thus also avoided the risk of incurring a strike should the district court have screened and dismissed the suit; after three such strikes, inmates cannot proceed *in forma pauperis* unless under imminent danger of serious physical injury. 28 U.S.C. § 1915(g); *Pischke v. Litscher*, 178 F.3d 497, 500 (7th Cir. 1999); *Evans v. Ill. Dept. of Corr.*, 150 F.3d 810, 811 (7th Cir. 1998). In addition, even when granting *in forma pauperis* status, the district court assesses an initial partial filing fee that a prisoner must prepay, and the entire filing fee will eventually be deducted from the inmate's prison trust account. *See* 28 U.S.C. § 1915(b); *Hains v. Washington*, 131 F.3d 1248, 1250 (7th Cir. 1997) (per curiam). In this instance, the processing of

Antonelli's submission as if it were a motion in his old criminal case enabled Antonelli to escape paying up front at least part the $150 filing fee for civil cases, as well as his responsibility for paying the entire fee over time from his prison trust account. *See Moran*, 218 F.3d at 649. The same is true with the appellate fees in this court. Had Antonelli been required to adhere to limitations imposed by the PLRA, he may have decided not to risk the consequences attached to filing a civil suit, or to pursuing it on appeal after it had been lost. *See Pischke*, 178 F.3d at 500 (recognizing that prisoners when thwarted from improperly disguising civil action as petition for habeas corpus may decide to drop claim rather than risk consequences associated with PLRA). Finally, we note that once a district court has granted *in forma pauperis* status and screened a prisoner complaint under § 1915A, it will direct the United States Marshals Service to ensure that proper service is effected on the defendant, which might have provided the BOP with a better understanding of, and realistic opportunity to defend against, Antonelli's claim (as opposed to Antonelli's effort, which resulted in his "motion" being routed to the criminal division of the United States Attorney's Office for the Northern District of Illinois). *See* 28 U.S.C. § 1915(d); Fed. R. Civ. P. 4(c)(2); *Graham v. Satkoski*, 51 F.3d 710, 712 (7th Cir. 1995) (Marshals Service is required to serve process on behalf of individuals proceeding *in forma pauperis*); *see also* Fed. R. Civ. P. 4(I)(1) (civil action challenging action of administrative agency must be served on the U.S. Attorney in the appropriate district; a copy of the complaint and summons must also be sent to the Attorney General and the agency).

The PLRA seeks to balance an inmate's right of access to the courts against both the need to curtail frivolous litigation that overwhelms the judicial system and the benefit of giving prison officials the first opportunity to address problems in the system. *See Kincade v. Sparkman*, 117 F.3d

949, 950-51 (6th Cir. 1997); *see also Smith v. Zachary*, 255 F.3d 446, 450-51 (7th Cir. 2001). Keeping these purposes in mind, we will not permit Antonelli to evade the PLRA's mandates. *See Moran*, 218 F.3d at 651 ("Prisoners who play games to avoid the PLRA should not expect courts to cooperate."). The 62 appeals that Antonelli has filed in this circuit alone over the last 16 years exemplify the need to strictly enforce these provisions.

Accordingly, although we in no way suggest disagreement with the district court's evaluation of the merits of Antonelli's claim, we conclude that the district court should not have reached the merits without first enforcing the PLRA. *Cf. Sloan v. Lesza*, 181 F.3d 857, 858 (7th Cir. 1999). We thus VACATE the district court's judgment and REMAND for further proceedings. On remand the district court should first assess and begin collecting the appellate fees for this appeal using the procedures set out in 28 U.S.C. § 1915(b); the court should then proceed to apply all applicable PLRA provisions to Antonelli's civil action. Any subsequent appeal by Antonelli from an adverse judgment following remand will in turn prompt additional appellate fees.

A true Copy:

      Teste:

                      _____
                      *Clerk of the United States Court of*
                      *Appeals for the Seventh Circuit*